**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAAFAR HAMEED, et al.,

    Plaintiffs,

v.                                          Case No. 11-15193

CITY OF DEARBORN, et al.,

    Defendants.
                                         /

**OPINION AND ORDER GRANTING "DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT"**

Plaintiffs Jaafar Hammed, Selma Hameed, Fatema Hammed, Fadila Hameed, Kothar Hameed, and Sadeq Hameed ("the Hammed Family") filed suit against Defendants Dearborn police officer Robert Price and the City of Dearborn alleging claims arising from Price's entry and search of Plaintiffs' home on August 18, 2009. Price purportedly unlawfully searched Plaintiffs' residence, physically assaulted members of the Hammed Family, and ignored Plaintiffs' requests to allow the female members of the Hameed Family to cover their heads in observance of their religion. Plaintiffs initially claimed Price and the City of Dearborn violated their First and Fourth Amendment rights (Counts I and II, respectively), and are liable for assault and battery (Count III), intentional infliction of emotional distress (Count IV), and invasion of privacy (Count V). On January 19, 2012, the parties stipulated to an order dismissing without prejudice Counts I, III, IV, and V, leaving only Count II—Plaintiffs' unlawful search claim.

Defendants filed a motion for summary judgment on June 22, 2012. Plaintiffs, on July 16, 2012, moved to amend their complaint and name as Defendant Corporal Vincent Belloli in place of Defendant John Doe, which this court denied. The parties fully briefed the summary judgment motion, and the court finds a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will grant the motion.

## I.  BACKGROUND

At 11:45 p.m. on August 18, 2009, the City of Dearborn 911 Emergency Dispatch received an anonymous call. (Defs.' Mot. Summ. J. Ex. A at 2, Dkt. # 12-2.) The caller stated, "[S]omebody's beating his wife and his kids. . . . I know the door was open and I saw the kid screaming. I said, . . . '[A]re you ok? What's going on?' and then he closed the door." (*Id.*) The caller said the residence was located at 4521 Curtis Street in Dearborn, Michigan. (*Id.* at 3.) When asked if she could still hear screaming, the caller answered, "Yes, they still [sic] screaming. . . . [T]he kid was outside holding his head and then he went inside. I said, "Are you okay?" and he just slammed the door." (*Id.*)

Dispatch informed Officers Robert Price and Vincent Belloli of the situation explaining, "[A]t 4521 Curtis, an anonymous neighbor's reporting that a small child came out of the house crying and holding his head. Apparently, his mom is being [abused] by the father inside 4521 Curtis." (*Id.* at 3.) Price was dispatched at 11:49 p.m. and arrived at the residence shortly thereafter at 11:52 p.m. (Defs.' Mot. Summ. J. Ex. D at 2, Dkt. # 12-7.) Price approached the home and heard a baby crying inside. (Defs.' Reply to Pls.' Resp. to Defs.' Mot. Summ. J. Ex. A at 26, Dkt. # 24-2.) He looked through the front doors but did not observe anything else to suggest domestic violence.

(*Id.* at 27–28.) Defendants claim the front doors were open when the officers arrived, (Pls.' Resp. in Opposition to Defs.' Mot. Summ. J. Ex. 4 at 36, Dkt. # 18-1), while Plaintiffs maintain that the doors were closed, (Pls.' Resp. in Opposition to Defs.' Mot. Summ. J. Ex. 3 at 63, Dkt. # 17-2).

Price claims he and Belloli knocked on the front door and announced "Dearborn Police." (Defs.' Reply to Pls.' Resp. to Defs.' Mot. Summ. J. Ex. A at 30–32, Dkt. # 24-2.) After waiting ten to fifteen seconds and receiving no response, the officers entered the home. (*Id.* at 32.) Plaintiffs' dispute that the officers knocked and announced their presence. (Pls.' Resp. in Opposition to Defs.' Mot. Summ. J. Ex. 3 at 82, Dkt. # 17-2.) Instead, Plaintiffs maintain they only heard a "loud noise." (*Id.* at 72.) However, it is unclear whether this loud noise refers to knocking on the door or the door opening; when asked what kind of noise he heard, Plaintiff Jaafar Hammed only describes it as "[t]he door noise." (*Id.*)

Price entered the front vestibule of the home where he was met by Plaintiff Jaafar Hammed. (Defs.' Mot. Summ. J. Ex. B at 75–76, Dkt. # 12-4.) After asking if anyone was fighting, Price informed Plaintiffs that a neighbor reported that a child was being beaten at Plaintiffs' residence. (*Id.* at 86–87.) Plaintiffs answered that no one was fighting, and after looking around and not seeing any violence, Price left the house. (*Id.* at 86, 89.) Price then cleared the situation with the City of Dearborn 911 Emergency Dispatch at 11:57 p.m. (Defs.' Mot. Summ. J. Ex. D, Dkt. # 12-7.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The nonmoving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52. When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

### III. DISCUSSION

Defendants argue that summary judgment should be granted because there was an objectively reasonable basis for believing that individuals within Plaintiffs' residence were at risk of injury to justify a warrantless search. Plaintiffs argue that summary judgment is improper because genuine issues of material fact exist regarding whether such an exigency existed. After considering the arguments below, the court finds that summary judgment is warranted.

### A. Unlawful Search Claim

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It is well settled that "warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). One such "exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah, v. Stuart*, 547 U.S. 398, 403 (2006). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey*, 437 U.S. at 392. It follows that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah*, 547 U.S. at 403.

Moreover, "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, ___ (citations omitted).  A police officer's responsibilities "include[] preventing violence and restoring order, not simply rendering first aid to casualties." *Brigham City, Utah*, 547 U.S. at 406.  The emergency aid exception applies when officers have "an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Fisher*, 558 U.S. at ___ (citations omitted).

The uncontested facts of this case render the emergency aid exception appropriate.  An anonymous neighbor placed a 911 call to the City of Dearborn 911 Emergency Dispatch stating, "[S]omebody's beating his wife and his kids. . . .  [T]he door was open and I saw the kid screaming. . . .  [T]he kid was outside holding his head and then he went inside.  I said, "Are you okay?" and he just slammed the door."  (Defs.' Mot. Summ. J. Ex. A at 2–3, Dkt. # 12-2.)  Price arrived at Plaintiffs' house within three minutes of being dispatched, approached the home, and heard a baby crying inside, consistent with the 911 call.  He allegedly knocked on the door and announced himself as a Dearborn police officer, but upon receiving no response, entered the home.  After speaking with Plaintiffs, surveying the house, and witnessing no violence, Price exited.  Price arrived at Plaintiffs' residence and cleared the situation all within five minutes.

Plaintiffs argue that the 911 call is not a sufficient basis to objectively believe that a person within the home was at risk of injury.  Plaintiffs claim that because the call was made anonymously by a person outside of the home, and because Price did not speak with the caller, the call has insufficient probative value to give rise to the emergency aid exception.

6

In fact, police officers may properly consider 911 calls as substantially probative evidence regarding whether an emergency exists. As the Sixth Circuit explained:

> The whole point of the 911 system is to provide people in need of emergency assistance an expeditious way to request it. Indeed in many communities, the use of 911 for any purpose other than to report an emergency or to request emergency assistance is at least a misdemeanor offense. *See, e.g.,* . . . Mich. Comp. Laws Ann. § 750.411a (West 2004) (punishing any false reporting of crimes, including through the 911 system) . . . . Because a 911 call is by its nature an appeal for help in an emergency, the emergency aid exception best fits the attitude of police responding to a 911 call under the circumstances present here.

*Johnson v. City of Memphis*, 617 F.3d 864, 870 (6th Cir. 2010). In *Johnson*, the court held that receiving a 911 "hang call"—in which a 911 caller hangs up before speaking with the operator and the operator is unsuccessful at reaching the caller upon calling back—combined with an officer approaching a home with an open door but receiving no response within, was sufficient to justify the emergency aid exception. *Id.* at 869. The circumstances surrounding the present dispute provide far stronger evidence of an exigency. The City of Dearborn Dispatch spoke with a caller who reported domestic violence occurring within Plaintiffs' home. Furthermore, Price heard crying from the home when he arrived just three minutes after being dispatched. These facts provide a sound objective basis for believing that occupants within the home may be injured or otherwise in need of immediate assistance.

Plaintiffs argue that there are two genuine issues of material fact: (1) whether the front doors were opened or closed when Price arrived; and (2) whether Price knocked and announced his presence before entering the home. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover*

7

*Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted). It is immaterial whether the front doors were open when Price arrived. The 911 call and sounds of crying provided an objective basis for believing that individuals may be in need of immediate aid; the front doors being open or closed would not negate that basis.

It is similarly immaterial if Price knocked and announced his presence. The Supreme Court explained that it is not necessary to knock and announce when "'circumstances presen[t] a threat of physical violence.'" *Hudson v. Michigan*, 547 U.S. 586, 589 (2006) (quoting *Wilson v. Arkansas*, 514 U.S. 927, 936 (2006)). Police officers are only required to "'have a reasonable suspicion . . . under the particular circumstances'" that a threat of physical violence is present, and "'[t]his showing is not high.'" *Hudson*, 547 U.S. at 590 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). The circumstances of this case certainly created a reasonable suspicion that individuals within Plaintiffs' home were at risk of violence; therefore, Price was not required to knock and announce, and the issue is immaterial as to whether Plaintiffs' Fourth Amendment right was violated.

Plaintiffs argue that there was not an objective basis for believing that individuals within their home were at risk of injury because when Price arrived, he did not observe anything, except for hearing a baby crying, that suggested domestic violence. But a lack of unusual behavior upon arriving at the home does not supersede the undisputed facts: a 911 call reported domestic violence at Plaintiffs' residence, and shortly thereafter Price heard crying within the home consistent with the call. These facts, by themselves, provide an objective basis for establishing the emergency aid exception. As Plaintiffs have not shown any evidence that could prove a genuine issue as to

8

whether this exigency existed, summary judgment is proper for Defendants. The search was lawful.

## B. Qualified Immunity

Even if the court were to deny summary judgment on the lawfulness of the search, Price would nonetheless be protected from liability by qualified immunity. In determining whether a governmental official is entitled to qualified immunity, the court first considers whether the facts, when viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, the court then asks "whether the right was clearly established." *Id.* A right is "clearly established" if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier*, 533 U.S. at 202). Qualified immunity can only be "defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). "If *no* reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" *Humphrey*, 482 F.3d at 847 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (alterations in the original).

As discussed in the above subsection, a reasonable jury could not conclude from the facts alleged that Plaintiffs' Fourth Amendment right was violated. Furthermore, a

9

reasonable officer could have acted as Price did under the circumstances. The combination of receiving a 911 call and hearing sounds of crying would lead at least some, if not all, officers to reasonably believe that individuals within Plaintiffs' home were at risk of injury. Plaintiffs have not offered any evidence to establish that no reasonable officer would agree with the legality of Price's conduct. Price is therefore entitled to qualified immunity on summary judgment.

### C. The *Monell* Claim

Plaintiffs seek to impose liability against the City of Dearborn pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). "A municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Instead, Plaintiffs are required to show that the municipality's official "policy or custom" was the "moving force of the constitutional violation." *Id.* at 694. Plaintiffs must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of the policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Specifically, Plaintiffs allege that the City of Dearborn failed to properly train its employees to handle Arabic or Middle Eastern religious female dress customs. A municipality is liable for failing to train when the plaintiff proves: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality]'s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).

Plaintiffs' argument fails for two reasons.  First, the only claim under which the City of Dearborn could have been held liable failing to train its employees—Plaintiffs' First Amendment claim (Count I)—was dismissed.  Plaintiffs' only remaining claim is Count II that asserts Price conducted an unlawful search; yet Plaintiffs do not argue that the City of Dearborn failed to properly train its employees on how to conduct lawful searches, thereby rendering Plaintiffs' claim against the City of Dearborn moot.  Second, even if Plaintiffs' First Amendment claim remained, Plaintiffs do not offer any evidence that shows the City of Dearborn had an official policy or custom of being intolerant to Arabic or Middle Eastern religious female dress customs, or that the City of Dearborn inadequately trained its employees on how to handle such religious dress customs.  The City of Dearborn is therefore awarded summary judgment on the *Monell* claim.

### IV.  CONCLUSION

Accordingly, IT IS SO ORDERED that "Defendants' Motion for Summary Judgment" [Dkt. # 12] is GRANTED.

 s/Robert H. Cleland   
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  August 30, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 30, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner   
Case Manager and Deputy Clerk

(313) 234-5522